UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 DEC -3  P 5: 44

OLADAYO OLADUKUN,

    Petitioner,

        v.

DAVID L. WINN,

    Respondent.

Civil Action No.  04-40198-RWZ

## MEMORANDUM IN SUPPORT OF
## RESPONDENT'S MOTION TO DISMISS PETITIONER'S PETITION FOR HABEAS CORPUS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

The Petitioner in this action, Oladayo Oladukin, is a federal inmate[1] incarcerated at the Federal Medical Center (FMC) Devens, Massachusetts.  Petitioner alleges that he has been treated with cruel and unusual punishment and deprived of due process while he has been placed in the Special Housing Unit (SHU) at FMC Devens.  He also challenges the incident reports he has received while in the SHU.   As relief, he requests that he be immediately transferred to another institution and that his Good Conduct Time be restored.  As explained below, Petitioner has not been mistreated and he has failed to exhaust administrative remedies available with respect to his claims, as required under applicable law, before initiating a claim in this Court.  Accordingly, Petitioner's Petition should be dismissed, or in the alternative, the Respondent should be granted summary judgment.

## I
## BACKGROUND AND STATEMENT OF MATERIAL FACTS

A.    **Petitioner's Incarceration At FMC Devens**

---

[1]    Register Number 21480-037.

1.    On July 7, 1997, Petitioner was sentenced in the United States District Court for the

District of Maryland to a 125 month term of imprisonment with three (3) years of

supervised release for Felon in Possession of a Firearm, violation of 18 U.S.C. §922

(G)(1).  See **Document 1a**, at pp. 3-5, Public Information Inmate Data, attached to Exhibit

1 Declaration of Attorney Advisor Ann Zgrodnik (hereinafter "**Document** _____ ,

[document description]").

2.    Petitioner arrived at FMC Devens on or about December 9, 2003, following a transfer from

the Federal Correctional Institution (FCI) Fairton, New Jersey, on or about November 6,

2003.  Id., at pp. 1–2.

3.    When Petitioner arrived at FMC Devens he was assigned to a General Housing Unit.  See

**Document 1b**, Inmate History Quarters.

4.    On May 30, 2004, Petitioner was placed in Administrative Detention pending an SIS

investigation for fighting.  See **Document 1c**, Administrative Detention Order dated May

30, 2004.  On August 30, 2004, Petitioner was provided with a new Administrative

Detention Order indicating that he was now pending investigation by both SIS and the FBI

for fighting.  See **Document 1d**, Administrative Detention Order, dated August 30, 2004.

5.    Under Bureau of Prisons (BOP or Bureau of Prisons) regulations, whether an inmate is a

pretrial detainee or a convicted inmate, placement in Administrative Detention is governed

by 28 C.F.R. § 541.22 (a).  This regulations provides, in pertinent part:

The Warden may also place an inmate in administrative detention when the inmates
continued presence in the general population poses a serious threat of life, property,
self, staff, other inmates or to the security or orderly running of the institution and
when the inmate:

(1)    is pending a hearing for a violation of Bureau regulations;

    (2)    is pending an investigation of a violation of Bureau regulations;

    (3)    is pending investigation or trial for a criminal act;

    (4)    is pending transfer.

28 C.F.R. § 541.22(a).

6.    Petitioner was placed in the SHU on May 30, 2004, as he was pending an investigation for fighting, a violation of BOP Regulations.  <u>See</u> **Documents 1c, 1d.**

7.    Under 28 C.F.R. § 541.22(c)(1), the process due to an inmate who is placed in administrative detention (AD) consists of the following: (1) the Segregation Review Officer (SRO), must conduct a record review within three work days of the inmate's placement in AD; (2) the SRO shall hold a hearing and formally review the status of each inmate who spends seven continuous days in AD; (3) the SRO shall thereafter (after seven continuous days in AD), review these cases on the record (in the inmate's absence) each week; and (4) shall hold a hearing and review these cases formally at least every 30 days. 28 C.F.R. § 541.22(c)(1).

8.    During Petitioner's placement in the SHU, he received or was offered three meals each day.  <u>See</u> **Document 1e**, SHU Daily Records May 30, 2004 through November 6, 2004. Petitioner was offered the opportunity to shower up to three times per week, and to recreate up to five times per week.  <u>Id</u>.  Also, medical staff made rounds through the SHU on a daily basis.  <u>Id</u>.  He received the appropriate three-day SHU review, as well as 7-day and 30-day SHU reviews.  <u>See</u> **Document 1f**, SHU Review Forms.

9.    Petitioner also received regular 30-day psychological assessments.[2]  <u>See</u> **Document 1i,**

---

    [2]    FMC Devens records show that Petitioner was on suicide watch from approximately 11:00 a.m. on August 30, 2004 to approximately 10:00 a.m. on August 31, 2004.

SHU Psychological Reviews.

10.  There is nothing in the records indicating that Petitioner's placement in administrative detention resulted in atypical or significant hardship to Petitioner.

**B.    Relevant Incident Reports And Administrative Remedy History**

**Administrative Remedy Case Number 356360-R1 (Incident Report Number 1252655)**

11.  On August 18, 2004, incident report number 1252655 was issued at FMC Devens, charging Petitioner with Refusing to Obey an Order of Any Staff Member and Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution, violations of BOP Code 307 and 399. 28 C.F.R. § 541.13. The incident report stated that on August 18, 2004, at approximately 12:40 p.m., Officer S. Powers responded to a duress call in cell 215. See **Document 1j**, Incident Report Number 1252655, §11, and Supporting Memorandum from Officer S. Powers dated August 18, 2004.

12.  When Officer S. Powers went to the cell, Petitioner was standing by the door. Id. Petitioner stated that he did not have a medical emergency and that he wanted to speak to a Lieutenant. Id. Officer Powers then reminded Petitioner that the duress button in his cell is for medical emergencies only, and he was not to press the button unless there was a medical emergency. Id.

13.  At approximately 12:45 p.m., the duress button was activated again by Petitioner. Id. As a result, staff responded again to Petitioner's demands to see a Lieutenant. Id.

---

See **Document 1g**, Suicide Risk Assessment dated August 30, 2004, and Post Suicide Watch Report dated August 31, 2004. Records also show that Petitioner was on suicide watch from approximately 1:00 p.m. on November 1, 2004 to approximately 8:20 a.m. on November 2, 2004. See **Document 1h**, Suicide Risk Assessment dated November 1,2004 and Post-Suicide Watch Report dated November 2, 2004.

14.   On August 18, 2004, at approximately 6:30 p.m., Lieutenant Duplessis delivered a copy of

the incident report to Petitioner. See **Document 1j**, §§14-16.

15.   An investigation into these charges was conducted by Lieutenant Duplessis on August 18,

2004. Id. at §22. After Petitioner was advised of his rights, he stated that he did not refuse

an order. Id. at §24. It was noted that Petitioner's attitude was poor. Id. Petitioner

requested inmate Cook, Reg. No. 05909-007, as a witness. Id. at §25. Upon concluding

his investigation, Lieutenant Duplessis referred the case to the Unit Discipline Committee

(UDC) for further action. Id. at §27. Lieutenant Duplessis determined that Petitioner

would remain in the Special Housing Unit (SHU). Id.

16.   Lieutenant Duplessis then forwarded Incident Report Number 1252655 to the UDC for

processing. On August 20, 2004, at 10:15 a.m., Petitioner appeared before the UDC for an

initial hearing and stated that "I had a medical reason to hit the duress button and I asked

for the Lieutenant to come and investigate a shot written on me August 17, 2004." See

**Document 1j**, §17. At the conclusion of the initial hearing, the UDC referred the charges

to the Discipline Hearing Officer (DHO) for disposition. Id. at §18. Petitioner was then

given notice of his DHO hearing, as well as notice of his rights at the hearing. See

**Document 1k**, Notice of Discipline Hearing Before The DHO, and **Document 1l**, Inmate

Rights at Discipline Hearing. As the "Notice" form reflects, Petitioner checked the line

indicating that he wanted a staff representative. See **Document 1k.**

17.   The staff member Petitioner requested did not agree to serving in this capacity due to there

being a conflict of interest. See **Document 1m**, Duties of Staff Representative. Another

staff member was appointed to serve as staff representative. See **Document 1n**, Duties of

Staff Representative. Petitioner also requested inmate Cook, inmate Bing, and inmate

Tomlinson to testify as witnesses at his DHO hearing. See **Document 1k**.

18. On September 20, 2004, the DHO hearing was held. See, **Document 1o**, Discipline

Hearing Officer (DHO) Report. The DHO report states that the appointed staff

representative, K. Leonard, appeared at the DHO hearing. Id. § II(C) & (D). The Staff

Representative stated that he discussed the incident report with Petitioner and the purpose

of the emergency duress button. Id. at §II (E).   The Staff Representative further stated that

Petitioner did not present evidence of having a medical emergency. Id.

19. Petitioner did not raise any procedural issues or present written documentation as evidence.

Id. at §III (B).  During the hearing, Petitioner stated, "I pressed the button.  Officer Powers

(reporting officer) came.  I asked to see Lieutenant Darrah and Dr. Brooks (Staff

Psychologist).  I wanted them to investigate an Incident Report.  She (Officer Powers) did

not tell me not to press the button.  I knew it (Emergency/Duress button) was not supposed

to be pushed for just any reason (non-emergency).  I hit the button about five minutes later.

I told her and another officer I wanted to see a Lieutenant." Id.

20. At the conclusion of the hearing, the DHO determined Petitioner committed the prohibited

act of Code 398, Interfering with a Staff Member in the Performance of Duties, rather than

the reported Code 399. Id. at §§ IV & V.  Also, the DHO dropped the reported code of

307, due to being repetitive to Code 398. Id.  The DHO stated that his findings were based

on the eyewitness account of Officer S. Powers, who stated that on August 18, 2004, at

approximately 12:40 p.m., Petitioner pressed his cell emergency/duress button. Id.

Officer S. Powers reported to the cell and asked if there was a medical emergency. Id.

Petitioner replied, "No." Id. Officer S. Powers then instructed Petitioner not to press the button unless there was a medical emergency. Id. Officer S. Powers stated that at approximately 12:45 p.m., Petitioner again pressed the cell emergency duress button, and again staff determined there was no medical emergency. Id.

21. The DHO noted that he considered Petitioner's claim, "I asked to see Lieutenant Darrah and Dr. Brooks. I wanted them to investigate an Incident Report. She did not tell me to press the button." Id.

22. The DHO determined that Petitioner did not present sufficient evidence to refute Code 398. Id. The DHO considered the SHU Information Bulletin For Inmates which states, "Inmates will use the duress (emergency) alarm button located in the cell for emergencies only. Any other use will result in disciplinary action." Id. The DHO considered the fact that Petitioner admitted in part to the violation. Id. The DHO also considered the location of the incident and determined that when Petitioner pressed the emergency/duress button, the SHU staff had to deviate from the normal course of their assigned duties and report to his cell to make a determination concerning his status.

23. The DHO determined, based on correctional experience, that inmates confined in SHU have reasonable access to SHU staff and visiting staff during routine rounds made in SHU and they can communicate on issues during these times. Id. Therefore, the DHO determined that Petitioner committed a violation of Code 398 based upon the greater weight of evidence. Id.

24. After finding that Petitioner violated Code 398, the DHO imposed the sanction of Loss of Social Telephone Privileges for 3 months (suspended pending clear conduct for 180 days),

loss of Commissary Privileges for three months from September 20, 2004, through

December 19, 2004.[3]  See **Document 1o**, §VI; see also **Document 1p**, Memorandum to

Business Office, dated September 20, 2004.  These sanctions were imposed to impress

upon Petitioner and others that "conduct of this nature will not be tolerated, and to deter

him and others from engaging in similar conduct of this nature in the future." See

**Document 1o**, §VII.

25.    On or about October 17, 2004, Petitioner submitted an appeal of the DHO's decision to the

Northeast Regional Director of the BOP.  See **Document 1r**, Regional Administrative

Remedy Appeal, Case No.: 356360-R1, and Response; **Document 1q**, at p.14,

Administrative Remedy Generalized Retrieval Screen for inmate Oladayo Oladokun,

Register Number 21480-037.

26.    The Petitioner's appeal was denied by the Regional Director on November 19, 2004.  See

**Document 1r**, at Part B Response, p. 2.  In the Regional Director's Response the Petitioner

is advised that if he is dissatisfied with the Response, he may appeal to the General

Counsel, Federal Bureau of Prisons within 30 calendar days of the date of the Response.

Id.

27.    A review of BOP records shows that Petitioner has not yet filed an appeal.  See **Document**

---

[3]    To the extent that Petitioner's Petition for Writ of Habeas Corpus is construed to allege a due process violation, it should be noted that this sanction does not raise any due process concerns, because it does not present a circumstance of atypical and significant hardships in relation to the ordinary incidents of prison life.  A liberty interest in a prisoner may arise either under the Due Process Clause of the Constitution itself or it may arise from certain statutes or regulations.  In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court explained that liberty interests created by prison regulations are limited to instances where such regulations impose atypical and significant hardships on an inmate in relation to the ordinary incidents of prison life.  Sandin, 515 U.S. at 484.

**1q.**

28.    Petitioner has not exhausted his administrative remedies regarding Administrative Remedy

Case No.: 356360-R1.

**Administrative Remedy Case Number 356361-R1 (Incident Report Number 1261968)**

29.    On September 14, 2004, at approximately 8:30 p.m., while Petitioner was housed in the

SHU at FMC Devens, Massachusetts, Correctional Officer P. Davis, informed Petitioner to

submit to hand restraints so he could secure his cell mate in the cell.  See **Document 1s,**

Incident Report Number 126198, §11.

30.    Petitioner refused to submit to hand restraints.  Id.  Correctional Officer P. Davis then gave

Petitioner a direct order to submit to hand restraints and Petitioner refused.  Id.

Correctional Officer P. Davis then notified the Operations Lieutenant, who proceeded to

the SHU.  Id.  The Operations Lieutenant gave Petitioner a direct order to comply.  The

Petitioner then complied with the Operations Lieutenant.  Id.

31.    On September 15, 2004, at 12:35 p.m., FMC Devens Acting Lieutenant P. Lyons delivered

a copy of Incident Report Number 1261968 to Petitioner and conducted an investigation of

the incident.  Id., §§ 15-16.  After Petitioner was advised of his rights, he then stated "I

wasn't asked to "cuff up", they wanted me to move back so inmate Valentine could be put

in the cell.  Id. at § 24.  He also stated that he did not want that man in his cell.  Id.  It was

noted that Petitioner displayed an agitated attitude when he was interviewed.  Id.  Petitioner

did not request Acting Lieutenant Lyons to contact any witnesses.  Id. at § 25.  Upon

concluding his investigation, Acting Lieutenant Lyons referred the case to the UDC for

further action and determined that Petitioner would remain in the SHU pending his hearing

before the UDC. Id. at §27.

32.    On September 20, 2004, at 2:55 p.m., Petitioner appeared before the UDC for an initial hearing and stated that "they did not tell me to cuff up." Id. at §17. "They told me to back up, I didn't want to back up." Id. Petitioner also stated that he did not want inmate Valentine as a cell mate because he is mentally unstable. Id.

33.    At the conclusion of the initial hearing, the UDC referred the charge to the DHO for disposition. Id. at §18. This referral was based on the seriousness of the charge. Id. at §19. Petitioner was then given notice of his DHO hearing, as well as notice of his rights at the hearing. See **Document 1t**, Notice of Discipline Hearing Before The DHO; **Document 1u**, Inmate Rights at Discipline Hearing. As the "Notice" form reflects, Petitioner checked the line indicating that he wanted a Staff Representative to be present at his DHO hearing. See **Document 1t**. The staff member Petitioner requested did not agree to serving in this capacity due to there being a conflict of interest. See **Document 1v**, Duties of Staff Representative.   Another staff member was appointed to serve as staff representative for Petitioner. See **Document 1w**, Duties of Staff Representative. Petitioner also requested a witness, inmate Valentine, to be called at the DHO hearing. See **Document 1t**.

34.    On September 23, 2004, the DHO hearing was held. See **Document 1x**, DHO Report. The DHO report states that staff representative, J. Hancock, was appointed and appeared at the hearing. Id. at §II (C), (D) and (E).   Staff representative, J. Hancock, stated to the DHO that he had discussed the Incident Report with Petitioner. Id.

35.    Petitioner did not raise any procedural issues or present written documentation as evidence. Id. at §III (B). During the hearing, Petitioner stated, "The officer did not tell me to submit

to restraints." Id.  He told me "Go to the back of the cell." Id.  Petitioner then explained

that he did not go to the back of his cell as he told the officer that he did not want to be in

the cell with inmate Valentine.  Id.  Petitioner stated "that he accepted him when the

Lieutenant came." Id.

36.    The DHO report states that Petitioner requested inmate Valentine to be called as a witness.

Id. at §III ( C ).  Inmate Valentine stated that he was "put in the cell with inmate Oladokun.

I don't remember what was said.  When the Lieutenant came, they (staff) put me inside the

cell." Id. at III (C)(2).

37.    At the conclusion of the hearing, the DHO determined Petitioner committed the prohibited

act Code 399, Conduct Which Disrupts or Interferes with the Orderly Running of the

Institution.  Id. §§ IV & V.  The DHO changed the Code 398 to 399.  Id. at §V.  The DHO

also dropped reported Code 307 as it was determined that this code was repetitive to 399.

Id.

38.    The DHO stated that his finding was based on the reported account of Officer P. Davis. Id.

The DHO found that Officer Davis' account of the incident was credible as written.  Also,

the DHO considered Petitioner's claim and determined that inmate Valentine did not

present sufficient evidence to refute the Code 399.  Petitioner further indicated that the

requested witness did not provide testimony which supported Petitioner's denial of the

charge.  The DHO noted that Petitioner admitted in part, "I told the Officer, I don't want to

be cell with him," and "I accepted him when the Lieutenant came." Id.  The DHO noted

that the evidence indicated that approximately 20 minutes later a Lieutenant Supervisor

had to intervene to resolve the matter.  Id.  Therefore, the DHO determined that Petitioner

committed the Code 399 based upon the greater weight of evidence. Id.

39.  After finding that Petitioner violated Code 399, the DHO imposed the sanction of 10 days of Disciplinary Segregation and 7 days Disallowance of his Good Conduct Time.[4] Id. §VI. This sanction was imposed to hold Petitioner responsible for his behavior as "the reported conduct disrupted operations in the Special Housing Unit and required additional staff intervention to the inmate." Id. at §VII.

40.  Petitioner served his 10 days of disciplinary segregation from September 23, 2004 to October 4, 2004 in the SHU.  See **Document 1b**, p. 1.  After completing 10 days of disciplinary segregation in the SHU, Petitioner then returned to Administrative Detention pending an investigation by SIS and the FBI for fighting.  See **Documents 1b, 1c and 1d**.

41.  On or about October 16, 2004, Petitioner submitted an appeal of the DHO's decision to the Northeast Regional Director of the Bureau of Prisons.  See **Document 1y**, Regional Administrative Remedy Appeal, Case No.: 356361-R1, and Response; **Document 1q**.

42.  Petitioner's appeal was denied by the Regional Director on November 19, 2004.  See **Document 1y**, at Part B Response, p. 2.  In the Regional Director's Response the Petitioner was advised that if he is dissatisfied with the Response, he may appeal to the General Counsel, Federal Bureau of Prisons within 30 calendar days of the date of the Response. Id.

43.  A review of BOP records shows that Petitioner has not yet filed an appeal.  See **Document 1q.**

44.  Petitioner has not exhausted his administrative remedies regarding Adminstrative Remedy

---

[4]     See footnote 3                               12

Case No.: 356361-R1.

**Incident Report Number 1238464**

45.    On October 5, 2004, Senior Officer Specialist W. Deeley delivered a copy of Incident Report Number 1238464, charging Petitioner with Fighting with Another Person, a violation of BOP Code 201.[5] See **Document 1z**, Incident Report Number 1238464. The incident report stated that an Special Investigative Services (SIS) investigation revealed that on May 30, 2004, at approximately 2:53 p.m., Petitioner was involved in a fight with approximately eight inmates at FMC Devens. Id. at §11. This information was verified by SIS Surveillance cameras and by confidential information received. Id.

46.    After Senior Officer Specialist W. Deeley delivered a copy of the Incident Report to Petitioner, he was advised of his rights. Id. at §§14, 22, 24. After Petitioner was advised of his rights, he stated, "I was trying to resolve the issue then I got hit." Id. at §24. He also stated that "I didn't lay a hand on anybody." "Lieutenant Colon is making a mistake." Id. It was noted that Petitioner displayed a fair and cooperative attitude during the investigation. Id. Petitioner did not request any witnesses. Id. at §25.

47.    Upon concluding his investigation, Senior Officer Specialist W. Deeley referred the case to the UDC for further action. Id. at §§26, and 27.

48.    On October 7, 2004, at approximately 1:30 p.m., a hearing was held before the UDC. Id. at §21. Petitioner advised the committee that he denied fighting with anyone. Id. at §17.

---

[5]    Due to an Administrative error, Petitioner was not provided with a copy of Incident Report Number 1238464 until October 5, 2004 when staff learned that the FBI was no longer handling the case. Petitioner was informed of this by written notice on October 6, 2004. See **Document 1aa**, Advisement of Incident Report Delay and Memorandum from SIS Lieutenant A. Colon, dated October 4, 2004. Petitioner was also officially informed of the corresponding delay in the UDC hearing on the Incident Report. See **Document kk.**

He claimed that "there were over 50 dudes, see me get thrashed in the unit." Id. At the conclusion of the hearing, the UDC referred the Incident Report to the DHO for disposition. Id. at §18. This referral was based upon the severity of the charge. Id. at §19.

49.    Petitioner was then given notice of this DHO hearing, as well as notice of his rights at the hearing. See **Document 1bb**, Notice of Discipline Hearing Before the DHO, and Inmate Rights at Discipline Hearing. As the Notice form reflects, Petitioner checked the line indicating that he wanted witnesses at his DHO hearing and listed three individuals. Id. Petitioner also stated that he wanted a Staff Representative to be present at his DHO hearing. Id. Petitioner also requested a specific staff member as a Staff Representative and that staff member agreed to serve as the representative and was assigned. Id.

50.    The DHO Hearing was held on November 8, 2004. See **Document 1cc**, DHO Report, Incident Report Number 1238464. The Petitioner acknowledged his rights and did not raise any procedural issues or submit supporting documentation to validate his contention that he had not engaged in fighting on the date of the incident or held a mop-ringer in search of confrontation. Id., at §§ I (B), III (B). The DHO Report states that after specific inquiry by the DHO, the petitioner could not demonstrate that the witnesses he requested could provide testimony that would show he did not brandish the mop-ringer. Id. at § III (C) (3). Thus, the Petitioner's requested witnesses were not called at the DHO Hearing and only their prior written statements from the Incident Report were considered. Id.

51.    At the conclusion of the DHO Hearing the DHO changed the Code 201 violation to a Code 299 violation (Conduct which disrupts or interferes with security or orderly running of institution). Id., at § V. The DHO based his determination on the greater weight of the

evidence including video surveillance of the incident and the admission testimony of the Petitioner during the incident investigation. Id.

52. The DHO imposed the sanctions of 15 days of Disciplinary Segregation and disallowance of 27 days of Good Conduct Time. Id., at § VI, VII. A copy of the DHO Report was provided to the Petitioner on November 18, 2004. Id., at § VIII (D).

53. The Petitioner appealed the DHO determination to the Regional Director on or about November 4, 2004. See **Document 1q**, at p.14. A response from the Regional Director is due within 30 days of the date the appeal is logged in as received, which will be on or about December 17, 2004. 28 C.F.R. § 542.18.

54. Petitioner has not exhausted his administrative remedies regarding Incident Report No.: 1238464. See **Document 1q.**

**Other Administrative Remedies**

**Change of Clothes**

56. On or about June 15, 2004, Petitioner submitted a Request for Administrative Remedy with the Warden at FMC Devens alleging that he has not received adequate change of clean underclothes per the unit laundry schedule while housed in the SHU. See **Document 1dd**, Request for Administrative Remedy, Case Number 341359-F1, and Response.

57. In a response dated July 21, 2004, Petitioner's Request for Administrative Remedy was denied. Id. It was explained to Petitioner that an investigation revealed that inmates assigned to the SHU receive clean underclothes every Monday, Wednesday, Friday as scheduled. Id.

58. Petitioner was informed that if he was not satisfied with this decision, he may appeal to the

Regional Director at the Northeast Region within 20 days of the date of the response. Id. Records indicate that Petitioner did not appeal the Warden's decision to the Regional Director. See **Document 1q**. Therefore, Petitioner failed to exhaust his administrative remedies with respect to Case Number 341359-F1.

**Victim of Assault and Transfer to Another Facility**

59. On or about August 22, 2004, Petitioner submitted a Request for Administrative Remedy with the Warden at FMC Devens alleging that staff were negligent in allowing other inmates to assault him. See **Document 1ee**, Request for Administrative Remedy, Case Number 348808-F1, and Response. Petitioner requests to be transferred to another BOP facility. Id.

60. In a response dated August 31, 2004, it was explained to Petitioner that the matter was referred to the appropriate authorities for investigation and action as appropriate. Id. Petitioner was also advised that he will remain in the SHU until such time as it is determined that either he will be transferred to another facility or it is safe for him to return to the general prison population. Id.

61. On September 16, 2004, Petitioner submitted a Regional Administrative Remedy Appeal. See **Document 1ff**, Regional Administrative Remedy Appeal, Case Number 348808-R1, and Response. Petitioner claimed that his current housing status lends to retaliatory actions by the SHU staff. He requests an immediate transfer. Id.

62. In a response dated October 21, 2004, Petitioner's appeal was denied. Id. The Regional Director explained that Petitioner was originally placed in administrative detention pending an investigation into his alleged assault. Following the investigation, Petitioner

received an incident report and is pending a hearing before a Discipline Hearing Officer. Petitioner was advised that he will remain in the administrative detention until a determination has been made on your case.

63.    Petitioner was further advised that his placement in SHU is in compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units. Id. It was also explained to Petitioner that if he has specific information regarding new allegations, he must provide them to staff so a proper review can be conducted. Id.

64.    BOP records indicate that Petitioner did not appeal the Regional Director's response. See Document 1q. Thus, Petitioner did not exhaust his administrative remedies with respect to these issues.

**Harassment By Staff**

65.    On September 13, 2004, Petitioner submitted a Request for Administrative Remedy, with the Regional Director alleging that he has been harassed by staff at FMC Devens. See Document 1gg, Request for Administrative Remedy, Case Number 352833-R1, and Rejection Notice.

66.    On September 16, 2004, this request was rejected for failure to submit a request through the institution for the Warden's review and response, and the issue he raised was not sensitive. Id. Petitioner was advised to file a request or appeal at the appropriate level via regular procedures. Id.

67.    BOP records show that Petitioner has not re-submitted on this issue. Since this request was rejected and he has not re-filed, Petitioner has failed to exhaust his administrative remedies with respect to this issue. See Document 1q.

## II
## ARGUMENT

**A.**   **The Petition Should Be Dismissed For Petitioner's Failure to Exhaust His Administrative Remedies**

The petition should be dismissed for failure of Petitioner to exhaust available administrative remedies.  The BOP' computerized data base reveals there is no record that Petitioner fully exhausted his administrative remedies as to any and all issues raised in the petition.  Therefore, Petitioner is precluded from seeking relief from this Court.

Under the Prison Litigation Reform Act, a prisoner must exhaust "such administrative remedies as are available" before bringing a civil action in federal court.  42 U.S.C. §1997e(a).  In Booth v. Churner, 121 S.Ct. 1819, 532 U.S. 731 (2001), a unanimous Supreme Court held that Congress mandated completion of any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief, "irrespective of the forms of relief sought and offered through administrative avenues." Id. at 1825 n. 6; Medina-Claudio v. Rodriguez-Mateo, et al., 292 F.3d 31 (1st Cir. 2002).  The administrative remedy system at issue in the case was nearly identical to the three-level system in use in the federal prison system.  See Booth v. Churner, 121 S.Ct. at 1821.

In Booth, the Supreme Court affirmed dismissal of the case for failure to exhaust the available administrative remedy procedure.  The High Court also closed the door on any futility arguments made by the inmate, stating, "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id. at 1825.  See also, Hartsfield v. Vidor, 199 F.3d 305 (6th Cir. 1999);  Wright v. Morris, 111 F.3d 414, 417 n. 3 (6th Cir.), cert. denied, 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997).

With respect to habeas petitions, it is well settled that failure to exhaust all stages of the administrative remedy system is a proper basis for dismissal. United States v. Brann, 990 F.2d 98 (3d Cir. 1993); Gonzalez v. Perrill, 919 F.2d 1 (2d Cir. 1990); Arias v. United States Parole Commission, 648 F.2d 196) (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303 (3d Cir. 1973); DeVincent v. United States, 587 F.Supp. 494 (E.D.Va. 1984), aff'd, 746 F.2d 1471 (4th Cir.), cert. denied, 470 U.S. 1055 (1985). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996).

The BOP administrative remedy procedure is set out at 28 C.F.R. §542.10 et seq., and provides formal review of any complaint which relates to any aspect of the inmate's confinement. Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team. A record of that attempt is signed by the inmate and a member of the Unit Team. If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within fifteen calendar days of the date that the basis of the complaint occurred. 28 C.F.R. §542.13. If the inmate is not satisfied with the Warden's response, the inmate may file an appeal with the Regional Director within 20 calendar days of the date of the Warden's response. 28 C.F.R. §§ 542.14, 542.15. If the inmate is dissatisfied with the regional response, the inmate may appeal that decision to the General Counsel fo the Federal Bureau of Prisons within 30 calendar days from the date of the Regional Director's response. 28 C.F.R. §542.14 and 542.15. Appeal to the Office of General Counsel is the final administrative appeal in the BOP.

The requirement that inmates exhaust their administrative remedies prior to seeking judicial relief serves three purposes: (1) allowing the appropriate agency to develop a factual

record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief

requested conserves judicial resources; and (3) providing agencies the opportunity to correct their

own errors fosters administrative autonomy.  Moscato v. Federal Bureau of Prisons, 98 F.3d 757,

761-762 (3d Cir. 1996).

  In the ordinary course of business, computerized indexes of all administrative requests and

appeals filed by inmates are maintained in the BOPs' computerized data base so rapid verification

may be made as to whether an inmate has exhausted the administrative remedy process on a

particular issue.  Also, hard copies of all administrative remedies that are filed through the

Regional and Central Office levels are maintained at the Northeast Regional Office, so a review of

the issues raised in each administrative remedy can be made.

  After a review of the administrative index for all administrative remedy requests and

appeals filed by the Petitioner pursuant to the procedures set forth at 28 C.F.R. §542.10, et. seq., it

was determined that Petitioner has not exhausted his available administrative remedies on any of

the issues raised in his petition.  Specifically, and as noted in the material facts section above, it

was determined that Petitioner has not exhausted his administrative remedies regarding the

following:  Appeal of DHO Decision on Incident Report Number 1252655; Appeal of DHO

Decision on Incident Report Number 1261968; Appeal of DHO Report on Incident Report

1238464; Victim of Gang Assault; Requesting Transfer to Another Institution; Staff Conduct;

Access to the Courts; denial of basic rights including use of the law library, personal property,

religious meals, and grooming.  See **Document 1q.**, pp.

  Therefore, because Petitioner has failed to exhaust his administrative remedies as to each

issue prior to filing the instant petition, the petition should be dismissed.

**B.**   **Petitioner's Request for Immediate Transfer To Another Institution is Not the Proper
Subject of a Habeas Corpus Petition, As He is Not Entitled to the Relief Requested
Because He has No Protected Liberty Interest in Being Assigned To A Particular
Institution**

As an initial matter, Petitioner Oladokun is not entitled to collateral relief pursuant to 28

U.S.C. § 2241 or § 2255.  Section 2241 provides that a writ of habeas corpus may be granted to a

prisoner, inter alia, "in custody in violation of the Constitution or laws or treaties of the United

State." Id. § 2241(c)(3).  Section 2255 provides that:

> [a federal prisoner] claiming the right to be released upon the ground that the sentence was
> imposed in violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral attack, may move the
> court in which the sentence was imposed to vacate, set aside, or correct the sentence."

28 U.S.C. § 2255.

Petitioner does not claim that he is unlawfully in BOP custody.  Nor does he claim the

right to be released from that custody.  Likewise, he does not contend that his sentence was

imposed in violation of federal law or the Constitution, that the court lacked jurisdiction to impose

the sentence, or that his sentence exceeds the maximum authorized by law.  And, finally, he does

not argue – nor could he – that BOP lacks the authority to chose the facility in which he will serve

his term of imprisonment.  See 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the

place of the prisoner's imprisonment."); see also, e.g., United States v. Serafini, 233 F.3d 758, 778

n.23 ("A district court has no power to dictate or impose any place of confinement for the

imprisonment portion of the sentence."); accord United States v. Williams, 65 F.3d 301, 307 (2d

Cir. 1995).  Cf. McKune v. Lile, 122 S. Ct. 2017, 2027 (2002) ("It is well settled that the decision

where to house inmates is at the core of prison administrators' expertise.").

Moreover, there is no right in the Constitution for an inmate to be assigned to a particular

institution or program. Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S.

215 (1976); Young v. Quinlan, 960 F.2d 351, 358 n. 16 (3d Cir. 1992); Pugliese v. Nelson, 617

F.2d 916 (2d Cir. 1980); Lott v. Arroyo, 785 F.Supp. 508 (E.D.Pa. 1991) (Constitution does not

confer on state inmate right to participate in pre-release program). In Moody v. Daggett, 429 U.S.

78 (1976), the Supreme Court addressed a challenge to the impact of a detainer on prison

programming. The Court noted:

> We have rejected the notion that every state action carrying adverse consequences
> for prison inmates automatically activates a due process right. In Meachum v. Fano,
> 427 U.S. 215... (1976), for example, no due process protections were required upon
> the discretionary transfer of state prisoners to a substantially less agreeable prison,
> even where that transfer visited a "grievous loss" upon the inmate. The same is true
> of prisoner classification and eligibility of rehabilitative programs in the federal
> system. Congress has given federal prison officials full discretion to control these
> conditions of confinement, 18 U.S.C. §4081, and petitioner has no legitimate
> statutory or constitutional entitlement sufficient to invoke due process.

429 U.S. at 88 n.9. In Pugliese v. Nelson, 617 F.2d 916, 923-925 (2d Cir. 1980), the Second

Circuit examined the statutes in effect in 1981 applicable to institutional placement and

community programs, 18 U.S.C. §§ 4081 and 4082, and found that the statutes vested in the

Attorney General "complete and absolute discretion with respect to the incarceration,

classification, and segregation of lawfully convicted prisoners." 617 F.2d at 923. The authority of

the Attorney General under these statutes has been delegated to the Federal Bureau of Prisons. 28

C.F.R. § 0.96.

The substantial documentation at FMC Devens shows that while Petitioner has been

housed in the SHU he has received all SHU reviews required under 28 C.F.R. § 541.22(c)(1). See

**Documents 1f and 1i**. Thus, because Petitioner was not denied any process available to inmates

placed in SHU pending investigation of a violation of BOP regulations, his due process rights

were not violated.

Therefore, pursuant to the above, because Petitioner has no entitlement to being assigned to a particular institution, no protected liberty interests cognizable under federal habeas corpus review has been implicated. Petitioner is not entitled to collateral relief through a habeas corpus petition as he does not claim that he is unlawfully in BOP custody, nor does he contend that his sentence was imposed in violation of federal law or the Constitution, that the court lacked jurisdiction to impose the sentence, or that his sentence exceeds the maximum authorized by law. Accordingly, Petitioner is not, as a matter of law, entitled to relief under § 2241 or § 2255.

**C.**    **Petitioner Was Not Denied Any Procedure Required Under The Due Process Clause**

Assuming <u>arguendo</u> that this Court reaches the merits of Petitioner's claims, it is clear that Petitioner was afforded the appropriate due process. Petitioner contends that at the DHO hearing concerning Incident Report Number 1252655, he was found guilty by the DHO without calling witnesses. <u>See</u> **Petition** at page 5. Also, he contends that he was penalized by the DHO, concerning Incident Report Number 1261968, when his seven days of Good Conduct Time were disallowed. He requests that his good conduct time be restored. <u>See</u> **Motion to Amend Petition**. Petitioner makes similar allegations with respect to Incident Report 1238464. This argument lacks merit because Petitioner was not denied any procedure required under the Due Process Clause.

The United States Supreme Court articulated the standards to be followed in prison disciplinary hearings in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). To safeguard due process, the court requires the following: (1) advanced written notice of the disciplinary charges; (2) the opportunity, when consistent with institutional and correctional goals, to call witnesses and present documentary evidence on their behalf; and (3) a written statement

from the fact finder as to the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 563-67

Since Wolff, the Bureau established regulations setting forth the procedures for DHO hearings. See 28 C.F.R. § 541.10 et seq. (2000). These regulations substantially track the procedures set forth in Wolff, supra. However, in some respects the regulations go beyond the constitutionally mandated procedures. Von Kahl v. Brennan, 855 F.Supp. 1413 (M.D.Pa. 1994).

Under the applicable regulations, when BOP staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.14. After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. §541.15. The initial hearing is ordinarily held within three work days (excludes the day staff became aware of the incident, weekends, and holidays) from the time staff became aware of the inmate's involvement in the incident. 28 C.F.R. §541.15(b). The UDC may either reach a finding whether a prohibited act was committed or refer the case to the Discipline Hearing Officer (DHO) for further hearing. 28 C.F.R. §541.15(f). The DHO has the authority to dismiss any charge, to find a prohibited act was committed and to impose any available sanction for the act. 28 C.F.R. §541.18.

The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.17. These procedures were designed to meet the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974). See Frankenberry v. Williams, 677 F.Supp. 793, 796-97 (M.D. Pa.), aff'd, 860 F.2d 1074 (3d Cir. 1988).

Specifically the regulations require the Warden to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R.§ 541.17(a). Next, the

Warden shall provide an inmate with a full time staff member to represent him/her at the DHO hearing, if the inmate desires. 28 C.F.R. § 541.17(b). At the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate has the right to submit names of requested witnesses and have them called to testify and to present documents. The DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. The DHO need not call repetitive witnesses or adverse witnesses. 28 C.F.R. § 541.17(C). The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.17(d). The DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. § 541.17 (f). Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. The record must include a brief statement of the reasons for the sanctions imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. § 541.17(g).

As demonstrated in the Background and Material Facts section above, these procedures have been rigorously followed with respect to each and every claim alleged by the Petitioner. The Petitioner has failed to establish that he was denied any of the above described procedures. Petitioner's allegations are without merit. The record indicates that the UDC hearing for Incident Report Number 1252655 was held within three work days of the time staff became aware of inmate's involvement in the incident. See **Document 1j**. The UDC hearing for Incident Report

Number 1261968 was held after this time period, however, Petitioner was properly notified in writing of this delay and none of his appeal opportunites were waived. See **Document 1jj**, Advisement of UDC Hearing Delay dated September 20, 2004.

In all instances Petitioner was provided with advanced written notice of the charges against him at least 24 hours prior to the DHO hearings. See **Documents 1j, 1o, 1s, 1x, 1z, 1bb, 1jj**. Petitioner requested a staff representative at both DHO hearings. See **Documents 1k, 1o, 1t, 1x, 1cc,**. The staff representative Petitioner requested for two of the DHO Hearings declined to serve as staff representatives, and for Incident Report 1238464 the staff member agreed and was assigned. See **Documents 1m, 1v, 1z, 1bb, 1cc**. As a result of the two declanations, a staff representative was appointed for each hearing, and the respective appointed staff representatives appeared at the DHO hearings. See **Documents 1n, 1w**. When Petitioner was given Notice of the DHO hearing for Incident Report Number 1252655, he requested Inmate Cook, Reg. No. 05909-007, Inmate Bing, and Inmate Tomlinson to testify as witnesses during the hearing. See **Documents 1k**. He stated that they could testify that "he asked for SHU Lieutenant Darrah and Dr. Brooks. Id. The DHO report reflects that inmate Cook was interviewed and he indicated that he saw inmate Oladokun press the Emergency/Duress button one time." See **Document 1o**, § III ( C ) (3). The report also indicates that inmate Bing and Inmate Tomlinson are unknown. Id.

The DHO report further indicates that Petitioner was informed that "based upon his statement, and the description of the incident report and referenced codes, the requested witnesses would not serve to refute either code 307 or 399." Id. Consequently, the witnesses Petitioner requested were not called to the hearing. Id. Concerning the DHO hearing on Incident Report Number 121968, Petitioner requested inmate Valentine to testify as a witness. See **Document 1t.**

On September 23, 2004, Petitioner's requested witness appeared as a witness. See **Document 1t**, §III (C). Petitioner was present throughout both hearings. See **Documents 1o, 1x**. The decisions of the DHO after each hearing were based upon the greater weight of all of the evidence presented. See **Documents 1o, 1x**.

On October 8, 2004, Petitioner was provided with a copy of the written DHO Report concerning Incident Report Number 1252655. See **Document 1o**. On October 12, 2004, Petitioner was provided with a copy of the written DHO report concerning Incident Report Number 1261968. See **Document 1x**. It was documented by the DHO, that due to caseload within the institution, there was a delay in providing a copy of the DHO reports to the Petitioner within 10-days. See **Document 1hh**, Memorandum For Central File dated October 7, 2004. See also **Document 1ii**, Memorandum For Central File dated October 8, 2004. The delays did not affect Petitioner's appeal opportunities.

An identically thorough process for investigation and hearing was followed for Incident Report 1238464. See Paragraphs 45 through 54 supra, and corresponding document citations.

In short, Petitioner alleges no other procedural errors. Therefore, because there is no evidence to support Petitioner's contention that he was improperly sanctioned, the complaint should be dismissed.

**D.    The DHO Determinations Were All Supported By Some Evidence**

It is well settled that the decision of a prison DHO is entitled to considerable deference by a reviewing court and the decision must be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 454-455, 105 S.Ct. 2768, 2775 (1985); Thompson v. Owens, supra; Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Griffin v. Spratt, 969 F.2d 16,

22 (3d Cir. 1992);  In announcing this standard, the Supreme Court stated that in reviewing the

findings of a prison disciplinary board, a court need not examine the complete record, assess the

credibility of the witnesses, nor weigh the evidence.  Instead, "the relevant question is whether

there is any evidence in the record that could support the conclusion reached by the disciplinary

board." Id. at 455-56.

      Applying this standard, once the reviewing court determines there is at least "some

evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by

the petitioner and uphold the finding of the DHO.  Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir.

1986).

      The evidence available to the DHO at the time of the hearing concerning Incident Report

Number 1252655 was the following:

1. Incident Report 1252655 and the investigation;
2. Eyewitness Account of Officer S. Powers;
3. Petitioner's claim, "I asked to see Lieutenant Darrah and Dr. Brooks.  I wanted them to investigate an Incident Report.  She did not tell me not to press the button.";
4. SHU Information Bulletin for Inmates which states in part, "Inmate will use the duress (emergency) alarm button located in the cell for Emergencies only.";
5. Petitioner's admission in part, "I pressed the button.  Officer Powers, and I knew it was not supposed to be pushed for just any reason.  I hit the button about five minutes later.  I told her and another officer I wanted see a Lieutenant."

      In reaching a determination, the DHO was thorough in his review and he relied upon the

greater weight of the evidence in determining that Petitioner committed a Code 398 violation.  See

**Document 1o.**

      The evidence available to the DHO at the time of the hearing concerning Incident Report

Number 1261968 was the following:

1. Incident Report 1261968 and the investigation;
2. The reported account of Officer P. Davis;

3.   Petitioner's claim, "The Officer did not tell me to submit to restraints. He came to my cell with inmate Valentine. He told me, go to the back of the cell. I didn't go to the back of the cell.";

4.   Petitioner's admission in part, "I told the Officer, I don't want to be cell with him, and I accepted him when the Lieutenant came."

As with Incident Report Number 1252655, the DHO's review was thorough and he relied

upon the greater weight of evidence in determining that Petitioner committed a Code 399

violation.  See **Document 1x.**

An identically thorough body of evidence was developed for Incident Report 1238464.

See Paragraphs 45 through 54 supra, and corresponding document citations.

Therefore, because the determinations of the DHO at both DHO hearings was supported by

some evidence, any challenge to the decisions of the DHO in finding Petitioner to have violated

Code 398, and 399 should be denied.

E.   **The Sanctions Imposed Do Not Violate Petitioner's Due Process Rights**

States may under certain circumstances create liberty interests which are protected by the

Due Process Clause. Sandin v. Connor, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418

(1995); See also Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415 96 L.Ed.2d 303 (1987).

But these interests will be generally limited to freedom from restraint which, while not exceeding

the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause

of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life. Id. (citations omitted)  Discipline by prison officials in

response to a wide range of misconduct falls within the expected perimeters of the sentence

imposed by a court of law. Id. at 485.  More directly, the Court in Sandin held that time in

administrative detention did not amount to atypical and significant hardship on the inmate. Id.

Further, the temporary loss of various privileges (i.e., telephone, package, commissary, and recreation privileges) does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate. Husbands v. McClellan, 990 F.Supp. 214 (1998). See also Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation). In Paulino v. Menifee, 2001 WL 243207 (S.D.N.Y. Mar. 9, 2001), the petitioner argued for reinstatement of his telephone privileges so that he could contact his children who reside in the Dominican Republic. The court held that the petitioner had alternate means of communication available to him (i.e. letter-writing and sending messages through other visiting family members) that militated against imposing interim injunctive relief. See also Pitsley v. Ricks, No. 96-CV-0372, 2000 WL 362023, at *5 (N.D.N.Y. Mar. 31, 2000) (dismissing prisoner's section 1983 suit alleging improper denial of telephone access where inmate had alternate means of communication with the outside world by mail); Acosta v. Bradley, No. Civ. A. 96-2874, 1999 WL 158471, at *7 (E.D.Pa. Mar. 22, 1999) (same).

In this action Petitioner's loss of Commissary privileges for three months and loss social telephone privileges for 3 months (suspended pending clear conduct for 180 days) (Incident Report 1252655) does not amount to atypical and significant hardship. Petitioner was found to have committed a Code 398 violation, interfering with a staff member in the performance of duties. Also, Petitioner's disallowance of Good Conduct Time for Seven Days and to serve in Disciplinary segregation for 10 days (Incident report 1261968) and subsequent 15 days of Disciplinary Segregation and disallowance of 27 days of Good Conduct Time (Incident Report 1238464) do not amount to atypical and significant hardship. In one instance Petitioner was found

to have committed a Code 399 violation, conduct which disrupts or interferes with orderly running of the Institution, and in the other to have committed a Code 299 violation, conduct which disrupts or interferes with security or orderly running of the institution. Consequently, Petitioner was sanctioned pursuant to Bureau of Prisons' Program Statement No. 5270.07, Inmate Discipline, consistent with the severity level of the violations he was determined to have committed.

## III
## CONCLUSION

Based on the foregoing, Respondent respectfully moves to dismiss Petitioner's Petition for Habeas Corpus, or in the alternative for summary judgment, on the grounds that Petitioner has failed to exhaust his available administrative remedies and because his claims are without merit.

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL J. SULLIVAN
United States Attorney

**OF COUNSEL**:
Ann H. Zgrodnik
Supervisory Attorney
Federal Bureau of Prisons
Consolidated Legal Center, Devens
P.O. Box 880
Ayer, MA 01432
978-796-1043 (Voice)
978-796-1040 (Fax)
azggrdnik@bop.gov

By:    /s/ Anton P. Giedt    12/03/04
Anton P. Giedt
Assistant U.S. Attorney
1 Courthouse Way
Boston, MA 02210
617-748-3309 (Voice)
617-748-3971 (Fax)
anton.giedt@usdoj.gov
BBO No.: 563928

---

**LOCAL RULE 7.1 CERTIFICATE**

As the Petitioner is acting *Pro Se* and detained within the Federal Bureau of Prisons, undersigned counsel respectfully requests waiver of the conference requirements of L.R. 7.1. A copy of this Motion has been served on the *Pro Se* Petitioner.

/s/ Anton P. Giedt  12/03/04
Anton P. Giedt
Assistant U.S. Attorney

---

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                                          Boston, Massachusetts
                                                                                     DATE: December 3, 2004

I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the Petitioner by First Class Mail by placing it in the mail room of the U.S. Attorney's Office, District of Massachusetts.

                                                           /s/ Anton P. Giedt
                                                           Anton P. Giedt
                                                           Assistant U.S. Attorney

| PRO SE PLAINTIFF: | AGENCY COUNSEL: |
|---|---|
| Oladayo Oladukun | Ann Zgrodnik |
| # 21480-037 | FMC Devens |
| Inmate Mail | Box 880 |
| 42 Patton Road | Ayer, MA 01432 |
| Box 879 | 978-796-1043 (Voice) |
| FMC Devens | 978-796-1040(Fax) |
| Ayer, MA 01432 | azggrdnik@bop.gov |