UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OLADAYO OLADOKUN, | |
| Petitioner, | |
| v. | Civil Action No. 04-40198-RWZ |
| DAVID L. WINN, | |
| Respondent. | |

**MEMORANDUM IN SUPPORT OF
RESPONDENT'S MOTION TO DISMISS PETITIONER'S PETITION FOR HABEAS
CORPUS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**I.  BACKGROUND**

Petitioner Oladayo Oladokun (Petitioner), Register Number 21480-037, is a federal inmate who was incarcerated at the Federal Medical Center, Devens, Massachusetts (FMC Devens) from December 9, 2003, through January 12, 2005.  See Exhibit A/ p. 6: Declaration of Attorney Advisor Ann Zgrodnik, at Document 1a, Public Information Inmate Data (hereinafter "Exhibit A/ p. ___" and reference to "Document 1 [letter designation], [document description]").  On February 5, 2005, Petitioner was designated to the Federal Correctional Institution (FCI), Petersburg, Virginia.  Id. at p. 5.  On July 7, 1997, Petitioner was sentenced in the United States District Court for the District of Maryland to a 125 month term of imprisonment with three (3) years of supervised release for Felon in Possession of a Firearm, violation of 18 U.S.C. §922 (G)(1).  Id. at pp. 7-8.  Assuming he receives all Good Conduct time available to him under 18 U.S.C. § 3624 (b), his projected satisfaction date on this sentence is October 29, 2006.  Id. at p. 8.  In the event that all of his remaining Good Conduct Time is disallowed, his full term expiration date is September 5, 2007.  Id.

As a result of the Memorandum of Decision issued by this Court on August 16, 2005 (Docket No.: 13), dismissing grounds 2,3 and 4, and preserving grounds 1 and 5 of Petitioner's original Petition (Docket No.: 1), Petitioner amended his Petition to only include grounds 1 and 5 (Docket No.: 14 and

Clerk's entry of October 19, 2005), and then filed a Memorandum of Law (Docket No.: 16), addressing the merits of his claims under grounds 1 and 5.

As to ground 1, Petitioner claims that he received Incident Report Number 1238464 for fighting with eight other inmates at FMC Devens (Incident Report Number 1238464(Ground1)). Docket No.: 16, pp. 2-4. He contends that his rights were violated during the discipline hearing. Id. Specifically, Petitioner claims that his Sixth Amendment rights were violated as a result of him being denied witnesses at the hearing. Id. The Discipline Hearing Officer (DHO) disallowed 27 days of Petitioner's good conduct time. As relief, Petitioner requests that the 27 days of good conduct time should be restored. Id.

With respect to ground 5, Petitioner alleges that Respondent abused his official government position by placing him in segregation. Docket No.: 16, pp. 4-7. Petitioner also claims that he was being abused in the Special Housing Unit (SHU) and wanted to be removed from his cell. Id. Petitioner alleges that instead of being moved, staff retaliated by issuing him an incident report which he claims was an attempt to deter him from complaining about the abuse that was taking place in the SHU. Id. He claims that the Unit Discipline Committee (UDC) hearing violated his due process rights when the Incident Report Number 1261968 was served over three working days in violation of 28 C.F.R. §541.15(b) (Incident Report Number 1261968 (Ground 5)). Id. Petitioner requests that the 7 days of good conduct time that were disallowed by the DHO be restored.

Thus, Petitioner requests that the Court issue an order restoring the total of 34 days of good conduct time that were disallowed. Id.

## II.  FACTS

A.   **Relevant Incident Reports and Administrative History**

  1.   **Incident Report Number 1261968 (Ground 5)**

On September 14, 2004, at approximately 8:30 p.m., while Petitioner was housed in the SHU at

FMC Devens, Correctional Officer P. Davis, informed Petitioner to submit to hand restraints so he could secure his cell mate in the cell. See Exhibit A/ pp. 18-20, Document 1b, Incident Report Number 1261968, § 11. Petitioner refused to submit to hand restraints. Id. Correctional Officer Davis then gave Petitioner a direct order to submit to hand restraints and Oladokun refused. Id. Correctional Officer Davis then notified the Operations Lieutenant, who proceeded to the SHU. Id. The Operations Lieutenant gave Petitioner a direct order to comply. Id. The Petitioner then complied with the Operations Lieutenant. Id.

On September 15, 2004, at 12:35 p.m., FMC Devens Acting Lieutenant P. Lyons delivered a copy of Incident Report Number 1261968 to Petitioner and conducted an investigation of the incident. See Exhibit A/ pp. 18-20, Document 1b, §§ 15-16. After Petitioner was advised of his rights, he then stated "I wasn't asked to "cuff up", they wanted me to move back so inmate Valentine could be put in the cell. Id. at § 24. Oladokun also stated that he did not want that man in his cell. Id. It was noted that Petitioner displayed an agitated attitude when he was interviewed. Id. at § 24. Petitioner did not request Acting Lieutenant Lyons to contact any witnesses. Id. at § 25. Upon concluding his investigation, Acting Lieutenant Lyons referred the case to the UDC for further action. Id. at § 27. Acting Lieutenant Lyons determined that Petitioner would remain in the SHU pending his hearing before the UDC. Id. Acting Lieutenant Lyons then forwarded Incident Report Number 1261968 to the UDC for processing. Id. On September 20, 2004, Petitioner was notified that the UDC hearing would be delayed beyond 3 working days due to shortage of staff. See Exhibit A/ pp. 21-22, Document 1c, Advisement of UDC Hearing Delay dated September 20, 2004.

On September 20, 2004, at 2:55 p.m., Petitioner appeared before the UDC for an initial hearing and stated that "they did not tell me to cuff up." See Exhibit A/ pp. 18-20, Document 1b, §17. "They told me to back up, I didn't want to back up." Id. Petitioner also stated that he did not want inmate Valentine as a cell mate because he is mentally unstable. Id. At the conclusion of the initial hearing, the

UDC referred the charge to the DHO for disposition. Id. at §18. This referral was based on the seriousness of the charges. Id. at §19. Petitioner was then given notice of his DHO hearing, as well as notice of his rights at the hearing. See Exhibit A/ pp. 23-24, Document 1d, Notice of Discipline Hearing Before The DHO, and Exhibit A/ pp. 25-26, Document 1e, Inmate Rights at Discipline Hearing. As the "Notice" form reflects, Petitioner checked the line indicating that he wanted a Staff Representative to be present at his DHO hearing. See Exhibit A/ pp. 23-24, Document 1d. The staff member Petitioner requested did not agree to serving in this capacity due to there being a conflict of interest. See Exhibit A/ pp. 27-28, Document 1f, Duties of Staff Representative, dated September 21, 2004. Another staff member was appointed to serve as staff representative for Petitioner. See Exhibit A/ pp. 29-30, Document 1g, Duties of Staff Representative, dated September 23, 2004. Oladokun also requested a witness, inmate Valentine, to be called at the DHO hearing. See Exhibit A/ pp. 23-24, Document 1d.

On September 23, 2004, the DHO hearing was held. See Exhibit A/ pp. 31-34, Document 1h, Discipline Hearing Officer (DHO) Report for Incident Report 1261968. The DHO report indicates that staff representative, J. Hancock, was appointed and appeared at the hearing. Id. at § II ( C ) and (D). Staff representative, J. Hancock, stated to the DHO that he had discussed the Incident Report with Petitioner. Id. at § II (E). Petitioner did not raise any procedural issues or present written documentation as evidence. Id. at § III (B). During the hearing, Petitioner stated, "The officer did not tell me to submit to restraints." Id. He told me "Go to the back of the cell." Id. Petitioner then explained that he did not go to the back of his cell as he told the officer that he did not want to be in the cell with inmate Valentine. Id. Petitioner stated "that he accepted him when the Lieutenant came." Id. The DHO report indicates that Petitioner requested inmate Valentine to be called as a witness. Id. at §III ( C )(1). Inmate Valentine stated that he was "put in the cell with inmate Oladokun. I don't remember what was said. When the Lieutenant came, they (staff) put me inside the cell." Id. at III ( C )(2).

At the conclusion of the hearing, the DHO determined Petitioner committed the prohibited act

Code 399, Conduct Which Disrupts or Interferes with the Orderly Running of the Institution. Id. at §§ IV & V. The DHO changed the Code 398 to 399. Id. at § V. The DHO also dropped reported Code 307 as it was determined that this code was repetitive to 399. Id. The DHO indicated that his finding was based on the reported account of Officer P. Davis. Id. The DHO found that Officer Davis' account of the incident is credible as written. Id. Also, the DHO considered Petitioner's claim and determined that inmate Valentine did not present sufficient evidence to refute the Code 399. Id. The DHO further indicated that the requested witness did not provide testimony which supported Petitioner's denial of the charge. Id. The DHO noted that Petitioner admitted in part, "I told the Officer, I don't want to be cell with him," and "I accepted him when the Lieutenant came." Id. The DHO noted that the evidence indicated that approximately 20 minutes later a Lieutenant Supervisor had to intervene to resolve the matter. Id. Therefore, the DHO determined that Petitioner committed the Code 399 based upon the greater weight of evidence. Id.

After finding that Petitioner violated Code 399, the DHO imposed the sanction of 10 days of Disciplinary Segregation and 7 days Disallowance of his Good Conduct Time.[1] Id. at § VI. This sanction was imposed to hold Petitioner responsible for his behavior as "the reported conduct disrupted operations in the Special Housing Unit and required additional staff intervention to the inmate." Id. at § VII. Following this determination and imposition of sanctions, on October 12, 2004, Petitioner was provided with a copy of the DHO report and was advised of his right to appeal this action within twenty (20) calendar days under the Administrative Remedy Procedure. Id. at §§ VIII, IX.

---

[1] To the extent that Petitioner's Petition for Writ of Habeas Corpus is construed to allege a due process violation, this sanction does not raise any due process concerns, because it does not present a circumstance of atypical and significant hardships in relation to the ordinary incidents of prison life. A liberty interest in a prisoner may arise either under the Due Process Clause of the Constitution itself or it may arise from certain statutes or regulations. In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court explained that liberty interests created by prison regulations are limited to instances where such regulations impose atypical and significant hardships on an inmate in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 484.

On or about October 16, 2004, Petitioner submitted an Administrative Appeal to the Northeast Regional Director of the Bureau of Prisons, challenging Incident Report Number 1261968. See Exhibit A/ pp. 37-41, Document 1j, Regional Administrative Remedy Appeal, Case Number 356361-R1, and Response. In his appeal, Petitioner states that he was deprived of due process because the Unit Discipline Committee hearing was held three days later without a signed extension by the Warden. Id. at pp. 37-39. Petitioner further alleges that the inmate placed in his cell was mentally unstable and that his refusal was for his own safety. Id.

In a response dated November 19, 2004, the Northeast Regional Director denied Petitioner's request. Id. at pp. 40-41. The response explained to Petitioner that the DHO determined he committed the prohibited act based on the evidence. Id. Petitioner was informed that the evidence reflects that Petitioner refused a direct order by staff, causing a disruption to the orderly running of the institution by requiring the presence of a Lieutenant to give him an order. Id. Thus, the DHO's determination that he committed the prohibited act was proper. Id. It was also explained to Petitioner that Program Statement 5270.07, Inmate Discipline, states that the UDC hearing shall ordinarily be held within three work days, and extensions beyond five work days need a signed memo from the Warden. Id. Petitioner was informed that his hearing was held on the third working day after he received the incident report. Id. Further, the response indicated that Petitioner's case reflected substantial compliance with Program Statement 5270.07, Inmate Discipline, the decision of the DHO was based upon the greater weight of the evidence, and the DHO's sanction were consistent with the severity level of the prohibited act. Id.

On or about November 28, 2004, Petitioner submitted a Central Office Administrative Remedy Appeal, to the National Appeals Administrator in the Bureau of Prisons' Central Office. See Exhibit A/ pp. 42-45, Document 1k, Central Office Administrative Remedy Appeal, Case Number 356361-A1, and Response. In his appeal, Petitioner challenges the DHO's decision of September 23, 2004, for Conduct

which Disrupts the Orderly Running of the Institution, Code 399 (most like 306 and 307). Id. at pp. 43-44. Petitioner contends that he was not notified nor was the UDC held in a timely manner. Id. He further contends that he provided evidence during the DHO hearing that the inmate placed in his cell was mentally incompetent. Id. As relief, he requests the incident report be expunged. Id.

In a response dated February 18, 2005, the National Appeals Administrator denied Petitioner's request. Id. at p. 45. The response indicated to Petitioner that the disciplinary proceedings indicated substantial compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units. Id. The response explained to Petitioner that the UDC hearing was held on the third working day after he received the incident report. Id. The response summarized that "the greater weight of the evidence supports the decision, and the sanctions imposed were appropriate for the offense and in compliance with policy. Id.

### 2.     Incident Report Number 1238464 (Ground 1)

On October 5, 2004, at approximately 9:00 a.m., Senior Officer Specialist W. Deeley delivered a copy of Incident Report Number 1238464, charging Petitioner with Fighting with Another Person, a violation of Bureau of Prisons Code 201.[2]  See Exhibit A/ pp. 46-49, Document 1l, Incident Report Number 1238464. The Incident Report stated that an SIS investigation revealed that on May 30, 2004, at approximately 2:53 p.m., Petitioner was involved in a fight with approximately eight inmates at FMC Devens. Id. at § 11. This information was verified by SIS Surveillance cameras and by confidential information received. Id.

After Senior Officer Specialist W. Deeley delivered a copy of the Incident Report to Petitioner, he was advised of his rights. Id. at §§ 14, 22, 23, 24. After Petitioner was advised of his rights, he

---

[2]     Due to an Administrative error, the incident report was written on July 8, 2004 at 10:00 a.m., but Petitioner was not provided with a copy of Incident Report Number 1238464 until October 5, 2004 when staff learned that the FBI was no longer handling the case. See Exhibit A, Document 1l (Administrative Error Memorandum). See also Exhibit A, Document 1m, Memorandum from SIS Lieutenant A. Colon, dated October 4, 2004.

stated, "I was trying to resolve the issue then I got hit." Id. at § 24.  He also stated that "I didn't lay a hand on anybody" "Lieutenant Colon is making a mistake." Id.  It was noted that Petitioner displayed a fair and cooperative attitude during the investigation. Id.  Petitioner did not request any witnesses. Id. at § 25.  Upon concluding his investigation, Senior Officer Specialist W. Deeley referred the case to the UDC for further action. Id. at §§ 26 and 27.  On October 6, 2004, Petitioner was notified that his UDC hearing would be delayed beyond three and five working days due to the incident report being suspended on July 8, 2004, pending FBI referral. See Exhibit A/ pp. 52-53, Document 1n, Advisement of UDC Hearing Delay dated October 5, 2004.

On October 7, 2004, at approximately 1:30 p.m., a hearing was held before the UDC. See Exhibit A/ 47-49, Document 1l, § 21.  Petitioner advised the committee that he denied fighting with anyone. Id. at § 17.  He claimed that "there were over 50 dudes, see me get thrashed in the unit." Id.  At the conclusion of the hearing, the UDC referred the Incident Report to the DHO for disposition. Id. at § 18.  This referral was based upon the severity of the charge. Id. at § 19.  Petitioner was then given notice of this DHO hearing, as well as notice of his rights at the hearing. See Exhibit A/ pp. 54-55, Document 1o, Notice of Discipline Hearing Before the DHO, and Exhibit A/ pp.56-57, Document 1p, Inmate Rights at Discipline Hearing.  As the Notice form reflects, Petitioner checked the line indicating that he wanted witnesses at his DHO hearing and listed five individuals. See, Exhibit A/ pp. 54-55, Document 1o.  He also indicated that he wanted a Staff Representative to be present at his DHO hearing. Id.; see also Exhibit A/ pp. 58-59, Document 1q, Duties of Staff Representative.

On November 8, 2004, the DHO hearing was held. See, Exhibit A/ pp. 60-69, Document 1r, DHO Report for Incident Report Number 1238464.  The DHO report indicates that the requested staff representative, Mr. Tart, appeared at the hearing. Id. at § II (b).  Staff representative Tart stated that "I have discussed the Incident Report, Supporting Documentation, and statements of requested witnesses with inmate Oladokun.  Last week I informed him that code 299, would also be considered based upon

8

the Supporting Documentation which shows him holding a mop-wringer and running around the common area searching for inmates. Inmate Oladokun claimed that he was not holding a mop-wringer or running around the unit. He claimed he was attacked and he did not do anything wrong." Id. at § II (E). Petitioner did not raise any procedural issues or present written documentation as evidence. Id. at § III (B). Petitioner was informed of a staff memorandum which explains the reason his Incident Report was not delivered to him until October 5, 2004. Id. Petitioner was also informed of the Advisement of Incident Report Delay form dated October 5, 2004, which explains the reason his UDC hearing was not conducted within the required three work days. Id. He was provided with the opportunity to explain how the delay may have harmed his defense of the charge as indicated in section no. 11 of the Incident Report and supporting documentation. Id. Petitioner indicated that the delay did not harm his defense of the charge. During the hearing, Petitioner stated "I was attacked by some inmates. I got hit with a weapon. I went and got a mop-wringer to protect myself. I don't remember running around the unit with the mop-wringer." Id.

The DHO report indicates that Petitioner requested five inmates to be called as witnesses. Id. at § III ( C ) (3). The DHO reviewed statements from five inmate witnesses and also informed Petitioner of relevant supporting documentation and the rationale for consideration of code 299. Id. The DHO informed Petitioner of his statement during the hearing and then asked him if his requested witnesses could provide testimony to show that he did not "retrieve a mop-wringer and return to the common area of the unit?" Id. Petitioner stated, "No." Id. Based upon this information, the DHO determined that these requested witnesses would not be called to the hearing since they would not provide testimony to refute the reported code 299. Id. Thus, the requested witnesses were not called to the hearing. Id.

At the conclusion of the hearing, the DHO determined Petitioner committed the prohibited act code 299, Conduct Which Disrupts or Interferes with the Orderly Running of the Institution, rather than the reported code 201, Fighting with another person. Id. at §§ IV & V. The DHO changed the Code

201 to 299.  Id. at § V.  The DHO indicated that his finding was based on the reported account of SIS Lieutenant A. Colon, who indicated an administrative investigation revealed that on "May 30, 2004, at approximately 2:53 p.m., two different inmate groups that were present in G-Unit/Range-B, including inmate Oladokun, Reg. No. 21480-037, engaged in fighting with each other."  Id.  The DHO sates that Lieutenant Colon indicated that Petitioner was identified as a participant via video surveillance.  Id.  The DHO also indicated that his finding was based upon his "review of the video surveillance tape/photographs of the reported incident which occurred in G-Unit/Range-B on May 30, 2004, at approximately 2:53 p.m."  Id. The DHO notes that the "surveillance tape shows that immediately prior to the reported incident inmate Oladokun, Reg. No. 21480-037, and inmate Eddo, Reg. No. 10719-036; were standing in the common area of the unit in close proximity to the inmate telephones.  Inmate Oladokun was then confronted by four inmates.  Inmate Oladokun engaged in a verbal confrontation with these inmates, and subsequently one of these inmates struck him in the upper body, and others pursued and kicked him as he fell to the floor.  The surveillance tape/photographs also show that at approximately 2:54 p.m., inmate Oladokun returned to the common area  inmate Oladokun returned to the common area of the unit while brandishing a mop-wringer in his left hand.  Inmate Oladokun walked about the common area in search of further confrontation.  He then dropped the mop-wringer and ran from the area to conceal his involvement in the matter."  Id.

   The DHO considered Petitioner's claim and determined that inmate Oladokun did not present sufficient evidence to refute the Code 299.  Id. at § V.  The DHO found that the reporting officer's account of the incident is credible as written and is supported by documentation which includes video surveillance tape/photographs of the reported incident.  Id.  The DHO indicated that Petitioner did not present evidence which indicates he sought or attempted to seek staff assistance either prior to, or immediately following the assault upon him.  Id.  The DHO noted that Petitioner admitted in part, "I went and got a mop-wringer to protect myself."  Id.  The DHO found that based upon this information it

10

was reasonable to conclude that "following the . . . assault inmate Oladokun made a voluntary decision to retrieve a mop-wringer for use as a weapon and return to the location of the incident in search of further confrontation with the assailants." Id. Therefore, the DHO determined that Petitioner committed the Code 299 based upon the greater weight of evidence. Id.

After finding that Petitioner violated Code 299, the DHO imposed the sanction of 15 days of Disciplinary Segregation and 27 days Disallowance of his Good Conduct Time.[3] Id. at § VI. These sanctions were imposed to hold Petitioner responsible for his behavior. Id. at §VII. It was noted by the DHO that engaging in group confrontations consistent with attempting/aiding/planning to threaten, fight with or assault others can lead to serious injury to all parties involved, and to staff, and may escalate into a major confrontation, thereby, threatening the security and orderly running of the institution." Id. Following this determination and imposition of sanctions, on November 18, 2004, Petitioner was provided with a copy of the DHO report and was advised of his right to appeal this action within twenty (20) calendar days under the Administrative Remedy Procedure. Id. at §§ VIII, IX.

On or about November 9, 2004, Petitioner submitted an Administrative Remedy Appeal to the Northeast Regional Director of the Bureau of Prisons, challenging Incident Report Number 1238464, Code 299, Conduct Which Disrupts or Interferes with the Orderly Running of the Institution. See Exhibit A/ pp. 70-74, Document 1s, Regional Administrative Remedy Appeal, Case Number 359103-R1, and Response. In his appeal, Petitioner claims that he was attacked and the evidence does not support the charge. Id. At pp. 70-72. He states that he picked up the mop wringer, then put it down and did not chase after any one. Id. As relief, Petitioner requests the chance to call witnesses for the new charge and to have the incident report expunged. Id.

In a response dated December 16, 2004, the Northeast Regional Director denied Petitioner's request. Id. At pp. 73-74. The response explained to Petitioner that the DHO determined that he

---

[3] See footnote 1, supra.

committed the prohibited act based upon the evidence of an SIS investigation, including supporting memoranda and video surveillance photographs. Id. Further, the response stated that Petitioner's case reflected substantial compliance with Program Statement 5270.07, Inmate Discipline, the decision of the DHO was based upon the greater weight of the evidence and the sanctions imposed were consistent with the severity level of the prohibited act. Id. It was noted that the sanctions imposed, 15 days of disciplinary segregation and 23 days disallowance of good conduct time, were not disproportionate to his misconduct. Id.

On or about December 23, 2004, Petitioner submitted a Central Office Administrative Remedy Appeal, to the National Appeals Administrator in the Bureau of Prisons' Central Office. See Exhibit A/ pp. 75-78, Document 1t, Central Office Administrative Remedy Appeal, Case Number 359103-A1, and Response. In his appeal, Petitioner challenges Incident Report Number 1238464, stating that the change in the offense code by the DHO was inappropriate. Id. at 76-77. Petitioner also claims that witnesses favorable to his case were not permitted to testify at the DHO hearing. Id. As relief, he requests that Incident Report Number 1238464 be expunged. Id.

In a response dated March 22, 2005, the National Appeals Administrator denied Petitioner's request. Id. at p. 78. The response indicated to Petitioner that the disciplinary proceedings indicated substantial compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units. Id. The response further explained to Petitioner that Program Statement 5270.07 provides "the DHO shall find that the inmate either: committed the prohibited act if reflected in the incident report; or did not commit the prohibited act charged or similar prohibited act if reflected in the incident report." Id. It was explained to Petitioner that he was advised by the DHO that he was considering the 299 offense a week prior to the hearing. Id. It was also explained that the DHO reviewed the written statement of each requested witness and determined that since they did not have information directly relevant to the charge, their appearance was not warranted. Id. The response summarized that "the greater weight of

12

the evidence supports the DHO's decision, and the sanctions imposed were commensurate to the severity level of the offense and in compliance with policy.  Id.

### III.  ARGUMENT

**A.     Petitioner Was Not Denied Any Procedure Required Under The Due Process Clause**

Petitioner contends that at the DHO hearing concerning Incident Report Number 1238464 (Ground 1), he was denied witnesses that were favorable to his case. See Docket No.: 16, p. 3.  As relief, he requests that the 27 days of good conduct time be restored.  Id. at page 4.  With respect to Incident Report Number 1261968 (Ground 5), Petitioner contends that his due process rights were violated when the Incident Report was served over three working days.  Id at page 6.  As relief, Petitioner requests that the 7 days of good conduct time be restored (34 days total).  Id. At page 7.  These arguments lack merit because Petitioner was not denied any procedure required under the Due Process Clause.

The United States Supreme Court articulated the standards to be followed in prison disciplinary hearings in Wolff v. McDonnell, 418 U.S. 539 (1974).  To safeguard due process, the following is required:  (1) advanced written notice of the disciplinary charges; (2) the opportunity, when consistent with institutional and correctional goals, to call witnesses and present documentary evidence on their behalf; and (3) a written statement from the fact finder as to the evidence relied on and the reasons for the disciplinary action.  Wolff v. McDonnell, 418 U.S. at 563-67

Since Wolff, the Bureau of Prisons (BOP) established regulations setting forth the procedures for DHO hearings.  See 28 C.F.R. § 541.10 et seq.  These regulations substantially track the procedures required under Wolff.  However, in some respects the regulations go beyond the constitutionally mandated procedures.  Von Kahl v. Brennan, 855 F.Supp. 1413 (M.D.Pa. 1994).

Under the applicable regulations, when BOP staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation.  28

C.F.R. §541.14. After investigation, the incident report is referred to a UDC for an initial hearing. 28 C.F.R. §541.15. The initial hearing is ordinarily held within three work days (excludes the day staff became aware of the incident, weekends, and holidays) from the time staff became aware of the inmate's involvement in the incident. 28 C.F.R. §541.15(b). The UDC may either reach a finding whether a prohibited act was committed or refer the case to the DHO for further hearing. 28 C.F.R. §541.15(f). The DHO has the authority to dismiss any charge, to find a prohibited act was committed and to impose any available sanction for the act. 28 C.F.R. §541.18. The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.17. These procedures were designed to meet the due process requirements prescribed by Wolff, 418 U.S. 539 (1974). See also Frankenberry v. Williams, 677 F.Supp. 793, 796-97 (M.D. Pa.), aff'd, 860 F.2d 1074 (3d Cir. 1988).

      Specifically the regulations require the Warden to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R.§ 541.17(a). Next, the Warden shall provide an inmate with a full time staff member to represent him/her at the DHO hearing, if the inmate desires. 28 C.F.R. § 541.17(b). At the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate has the right to submit names of requested witnesses and have them called to testify and to present documents. The DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. The DHO need not call repetitive witnesses or adverse witnesses. 28 C.F.R. § 541.17(c). The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.17(d). The DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. § 541.17 (f). Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the

DHO. The record must include a brief statement of the reasons for the sanctions imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. § 541.17(g).

In this case the Petition should be denied because Petitioner has failed to establish that he was denied any of the above described procedures. Petitioner's allegations are without merit. The record indicates that the UDC hearing for Incident Report Number 1261968 (Ground 5) was held within 4 working days of the incident and within three working days of the time staff became aware of this incident and issued an Incident Report. See Exhibit A/ pp. 18-20, Documents 1b; 28 C.F.R. §541.15(b). To address the possible delay of the hearing, Petitioner was notified in writing of a delay of the hearing due to shortage of staff. See Exhibit A/ pp. 21-22, Document 1c. The UDC hearing for Incident Report Number 1238464 (Ground 1) was held after five working days due to the incident report being suspended on July 8, 2004, pending FBI referral. On October 6, 2004, Petitioner was properly notified of this delay in writing. See Exhibit A/ pp. 52-53, Document 1n. Petitioner was provided with advanced written notice of the charges against him at least 24 hours prior to the DHO hearings with respect to both incidents. See Exhibit A, Documents 1b, 1c, 1h, 1l, 1n, 1r. Petitioner requested a staff representative at both DHO hearings. See Exhibit A, Documents 1d, 1h, 1o, 1r. The staff representative Petitioner requested for the DHO Hearing concerning Incident Report Number 1261968 (Ground 5) declined to serve as a staff representative. See Exhibit A/ pp. 27-28, Document 1f. As a result a staff representative was appointed for the hearing, and the respective appointed staff representative appeared at the DHO hearing for Incident Report Number 1261968 (Ground 5) . See Exhibit A/ pp. 29-30, Document 1g. The staff representative Petitioner requested for the DHO Hearing concerning Incident Report Number 1238464 (Ground 1) served as his staff representative and appeared at the DHO hearing. See Exhibit A/ pp. 58-69, Documents 1q, 1r.

When Petitioner was given Notice of the DHO hearing for Incident Report Number 1261968

(Ground 5), Petitioner requested inmate Valentine to testify as a witness. See Exhibit A/ pp. 23-24 and 31-34, Documents 1d, 1h. On September 23, 2004, Petitioner's requested witness appeared as a witness at the DHO hearing. See Exhibit A/ pp. 31-34, Document 1h, § III ( C ). Concerning the DHO hearing on Incident Report Number 1238464 (Ground 1), he requested inmate Newton, inmate Smith, inmate Wilkey, inmate Harris, and inmate Eddo to testify as witnesses during the hearing. See Exhibit A/ pp. 54-55, Documents 1o. He stated that they could testify that he was not fighting anybody and he also stated that they could explain what happened. Id. The DHO report reflects that four of the inmate witnesses provided written statements and one of the inmate witnesses was interviewed during the preliminary investigation. See Exhibit A, Document 1r, § III (c)(3). The report further indicates that the DHO informed Petitioner of relevant supporting documentation and the rational for consideration of code 299. Id. He also informed him of his statement during the hearing and after asking him if his requested witnesses could provide testimony to show that he did not retrieve the mop wringer and return to the common area of the unit, Petitioner responded "No." Id. Based on this information, the DHO "determined that the requested witnesses would not provide testimony to refute the reported code 299." Id. Consequently, the witnesses Petitioner requested were not called to the hearing. Id.; see also 28 C.F.R. § 541.17(c). Petitioner was present throughout both hearings.

  The decision of the DHO with respect to both incidents was based upon the greater weight of all of the evidence presented at the DHO hearings. See Exhibit A/ pp. 31-34 and 60-69, Documents 1h, 1r. On October 12, 2004, Petitioner was provided with a copy of the written DHO report concerning Incident Report Number 1261968 (Ground 5). See Exhibit A/ pp. 31-34, Document 1h, § IX. It was documented by the DHO, that due to caseload within the institution, there was a delay in providing a copy of the DHO reports to the Petitioner within 10-days. See Exhibit A/ pp. 35-36, Document 1i. On November 18, 2004, Petitioner was provided with a copy of the written DHO report concerning Incident Report Number 1238464 (Ground 1). See Exhibit A/ pp. 60-69, Document 1r.

Petitioner alleges no other procedural errors. Therefore, because there is no evidence to support Petitioner's contention that he was improperly sanctioned, the petition should be dismissed.

**B.     The Determinations of the DHO Was Supported By Some Evidence**

It is well settled the decision of a prison DHO is entitled to considerable deference by a reviewing court and the decision must be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445 (1985); Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986). In announcing this standard, the Supreme Court stated that in reviewing the findings of a prison disciplinary board, a court need not examine the complete record, assess the credibility of the witnesses, nor weigh the evidence. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 456 (1985).

Applying this standard, once the reviewing court determines there is at least "some evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986).

The evidence available to the DHO at the time of the hearing concerning Incident Report Number 1261968 (Ground 5) was the following:

1.  Incident Report 1261968 and the investigation;
2.  The reported account of Officer P. Davis;
3.  Petitioner's claim, "The Officer did not tell me to submit to restraints. He came to my cell with inmate Valentine. He told me, go to the back of the cell. I didn't go to the back of the cell.";
4.  Petitioner's admission in part, "I told the Officer, I don't want to be cell with him, and I accepted him when the Lieutenant came."

In reaching its determination, the DHO relied upon the greater weight of evidence in determining Petitioner committed Code 399. See Exhibit A/ pp. 31-34, Document 1h, §§ V, VI, VII.

With respect to Incident Report Number 1238464 (Ground 1), the following evidence was

17

available to the DHO at the time of the hearing :

1. Incident Report 1238464 and the investigation;
2. The reported account of SIS Lieutenant A. Colon;
3. Video Surveillance tape/photographs;
4. Petitioner's claim, "I was attacked by some inmates. I got hit with a weapon," and "I don't remember running around the unit with the mop-wringer.";
5. Petitioner's admission in part, "I went and got a mop-wringer to protect myself."

In reaching its determination, the DHO relied upon the greater weight of the evidence in determining Petitioner committed Code 299. See Exhibit A/ pp. 60-69, Document 1r, §§ V, VI, VII..

As evidenced by the record, there is substantial evidence and explanation to support the findings of the DHO. Because the determination of the DHO at both DHO hearings was supported by some evidence, any challenge to the decisions of the DHO in finding Petitioner to have violated Code 399, and Code 299 should be denied. Superintendent v. Hill, 472 U.S. 445 (1985).

**C.   The Sanctions Imposed Do Not Violate Petitioner's Due Process Rights**

States may under certain circumstances create liberty interests which are protected by the Due Process Clause. Sandin v. Connor, 515 U.S. 472, 483-484 (1995); See also Board of Pardons v. Allen, 482 U.S. 369 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Connor, 515 U.S. 472, 483-484 (1995) (citations omitted). Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. Id. at 485. The Court in Sandin held that time in administrative detention did not amount to atypical and significant hardship on the inmate. Id.

The temporary loss of various privileges (i.e., telephone, package, commissary, and recreation privileges) does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate. Husbands v. McClellan, 990 F.Supp. 214 (1998); see

18

also Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation).

In Paulino v. Menifee, the petitioner argued for reinstatement of his telephone privileges so that he could contact his children who reside in the Dominican Republic. However, the court held that the petitioner had alternate means of communication available to him (i.e. letter-writing and sending messages through other visiting family members) that militated against imposing interim injunctive relief. 2001 WL 243207 (S.D.N.Y. Mar. 9, 2001); see also Pitsley v. Ricks, No. 96-CV-0372, 2000 WL 362023, at *5 (N.D.N.Y. Mar. 31, 2000) (dismissing prisoner's section 1983 suit alleging improper denial of telephone access where inmate had alternate means of communication with the outside world by mail); Acosta v. Bradley, No. Civ. A. 96-2874, 1999 WL 158471, at *7 (E.D.Pa. Mar. 22, 1999)(same).

Petitioner's disallowance of Good Conduct Time for 7 days and to serve in Disciplinary Segregation for 10 days does not amount to atypical or and significant hardship. See Exhibit A/ pp. 31-34, Document 1h, § VII. Petitioner was found to have committed Code 399, Conduct which disrupts or interferes with orderly running of the Institution. Id. Also, disallowance of Good Conduct Time for 27 days and to serve in Disciplinary Segregation for 15 days does not amount to atypical and significant hardship. See Exhibit A/ pp. 60-69, Document 1r, § VII. Petitioner was found to have committed Code 299, Conduct which disrupts or interferes with the security or orderly running of the institution. Id. Consequently, in both instances Petitioner was sanctioned pursuant to BOP Program Statement No. 5270.07, Inmate Discipline, consistent with the severity level of the offense.

## IV.  CONCLUSION

Based on the foregoing, Respondent respectfully moves to dismiss Petitioner's Petition for Habeas Corpus, or in the alternative for summary judgment because his claims are without merit.

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL J. SULLIVAN
United States Attorney

**OF COUNSEL**:
Ann H. Zgrodnik
Supervisory Attorney
Federal Bureau of Prisons
Consolidated Legal Center, Devens
P.O. Box 880
Ayer, MA 01432

By:   /s/ Anton P. Giedt    1/27/2006
Anton P. Giedt
Assistant U.S. Attorney
1 Courthouse Way
Boston, MA 02210
617-748-3309 (Voice)
617-748-3971 (Fax)

---

**LOCAL RULE 7.1 CERTIFICATE**

As the Petitioner is acting Pro Se and detained within the Federal Bureau of Prisons, undersigned counsel respectfully requests waiver of the conference requirements of L.R. 7.1.  A copy of this Motion has been served on the Pro Se Petitioner.

  /s/ Anton P. Giedt   1/27/2006
Anton P. Giedt
Assistant U.S. Attorney

---

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                                                           Boston, Massachusetts
                                                                                                       DATE: January 27, 2006

I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the Petitioner by First Class Mail by placing it in the mail room of the U.S. Attorney's Office, District of Massachusetts.

  /s/ Anton P. Giedt
Anton P. Gledt
Assistant U.S. Attorney

---

**PRO SE  PLAINTIFF:**
Oladayo Oladukun
# 21480-037
Inmate Mail
Petersburg, VA

**AGENCY COUNSEL**:
Ann Zgrodnik
FMC Devens
Box 880
Ayer, MA 01432
978-796-1043 (Voice)
978-796-1040(Fax)
azggrdnik@bop.gov